

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joseph Frederick Williams, :
        Plaintiff, :
         :
   v. :   File No. 2:04-CV-278
         :
CSC Treatment Team :
Members, Michael Lyon LUS, :
Dana Lesperance CSS, Alice :
Grow CSS, Todd Blanchard :
CSS, and Daniel Broe CSS, :
        Defendants. :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 34 and 40)

Plaintiff Joseph Frederick Williams, a Vermont inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 claiming that the defendants discriminated against him on the basis of his race. Williams, who is African-American, was suspended from participation in his prison's Cognitive Self-Change ("CSC") program, and claims that his 90-day suspension was longer than the suspensions imposed on white inmates. His complaint seeks compensatory damages, punitive damages and injunctive relief in the form of restored good time credits.

The defendants have moved for summary judgment on each of Williams' claims for relief. The defendants argue that Williams has failed to demonstrate the

physical harm required for compensatory damages, the evil motive necessary for an award of punitive damages, and any entitlement to good time credits. The defendants also claim official capacity immunity from damages under the Eleventh Amendment. For the reasons set forth below, I recommend that the motion for summary judgment be GRANTED.

The defendants' summary judgment motion does not squarely address the question of whether there was unlawful discrimination, or whether Williams is entitled to nominal damages as the result of allegedly unconstitutional conduct. This is perhaps because Williams did not request nominal damages in his complaint. Nonetheless, Williams may still be entitled to nominal relief. Therefore, I further recommend that Williams be granted leave to amend his complaint to add additional requests for relief, including but not limited to nominal damages.

## Factual Background

In July, 2004, the defendants suspended Williams from the CSC program for 90 days. The reasons for the suspension were provided in a written "CSC Notification

of Removal," which stated that since he had begun CSC programming, Williams had received several major disciplinary reports ("DR") and one minor DR for various offenses. These offenses included refusing to "lock-in," inappropriate "racial or gender based" comments, and interfering with a correctional officer. (Paper 34-3 at 1). The notification stated that "the CSC unit needs to be [a] non-criminal and non-threatening environment to facilitate positive change; your behavior has had a negative impact on other members of the unit." Id.

Williams claims that the length of his suspension from the CSC program was the product of racial discrimination. Specifically, he alleges that "other inmates removed from the CSC Program which were all white their [sic] suspension times did not exceed 30 days. One inmate was removed 4 (four) times before he was removed for a calendar year." (Paper 5 at 4-5). For relief, the complaint seeks compensatory damages, punitive damages, "retroactive good time and damages." Id. at 6.

The defendants do not dispute the fact that Williams was suspended for 90 days. Nor do they directly address the issue of racial discrimination. Instead, the

defendants seek summary judgment on each of Williams' specific claims for relief. First, the defendants claim that Williams did not suffer a physical injury as a result of his removal from the CSC program, citing his deposition testimony for support. As discussed below, this fact may determine whether or not Williams can recover compensatory damages. Second, the defendants argue that Williams was suspended because of discipline problems, and has failed to show the evil motive or reckless indifference required for an award of punitive damages. Third, the defendants contend that the complaint does not set forth any facts in support of his claim for good-time credits. Finally, they argue official capacity immunity from damages.

In opposition to summary judgment, Williams disputes the physical injury issue. He argues that because he was suspended from CSC, all injuries suffered after that time, including alleged deprivations of food and clothing while in solitary confinement and a back injury suffered at the hands of correctional officials, are attributable to the defendants. With respect to punitive damages, Williams compares his written "CSC Notification of

4

Removal" with those of white inmates, and claims that the alleged disparity in treatment is evidence of "actions that were morally bad or wrong as well as wicked." (Paper 42 at 4). Williams also argues that he is entitled to an additional five good time credits that, had he remained in the CSC program, he would have been eligible to receive. With respect to the Eleventh Amendment issue, Williams appears to be withdrawing his claims against the defendants in their official capacities.

## Discussion

I. <u>Summary Judgment Standard</u>

Summary judgment should be granted only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that there is no genuine issue of material fact. <u>See</u> <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286 (2d Cir. 2002); <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995) (stating that movant may meet burden by "point[ing] to an absence

of evidence to support an essential element of the nonmoving party's claim."). Once the movant satisfies this burden, the non-moving party must respond by setting forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In determining whether summary judgment is appropriate, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004).

II. Compensatory Damages

A prisoner may not collect compensatory damages for a constitutional violation without showing that he has suffered a physical injury. See Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002). This rule arises out of Section 803(d)(e) of the Prisoner Litigation Reform Act ("PLRA"), codified at 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of

physical injury." 42 U.S.C. § 1997e(e).

The defendants properly note that, in his complaint, Williams alleges only "mental anguish." (Paper 5 at 6). The defendants also cite Williams' deposition, in which he was asked whether his suspension from CSC had caused him physical harm. Williams initially responded that the suspension had not resulted in physical harm, but then added that while in segregation "[t]hey kind of starved me." Williams subsequently admitted that he was segregated for receiving a series of DRs, and that his segregation was not a direct result of his removal from CSC. (Paper 34-4 at 3-4).

Like his deposition testimony, Williams' memorandum in opposition to summary judgment makes reference to injuries that, even when viewed in a light most favorable to him, did not result directly from his CSC suspension. In his memorandum, Williams repeats the claim that he was mistreated while in segregation. He also references a back injury that was "re-aggravated" on several occasions both before and after his removal from CSC. (Paper 42 at 4). In an attempt to link his injuries to the alleged discrimination, Williams claims that "[t]hroughout the

7

months of August to September all the emotional abuse, physical abuse . . . and any extensive damage suffered by the Plaintiff to his lower back Defendants are liable for, since they are responsible for the Plaintiff's disposition." Id.

In order to prevail on a constitutional claim for damages under § 1983, a plaintiff must show that the defendants were the proximate cause of his injuries. See Martinez v. California, 444 U.S. 277, 285 (1980). Here, Williams claims to have suffered physical harm while in prison, but can only indirectly attribute that harm to the fact that he was suspended from CSC. Accordingly, the defendants did not proximately cause his alleged physical injuries, and cannot be held liable for the actions of correctional officers or others with whom Williams came into contact after his suspension. I therefore recommend that the defendants' motion for summary judgment on Williams' claim for compensatory damages be GRANTED.

III. Punitive Damages

While the Second Circuit has generally barred prisoner claims for compensatory damages where no

8

physical injury is shown, it has also held that nominal and punitive damages are permissible under the PLRA. See Thompson, 284 F.3d at 418. Punitive damages may be awarded under § 1983 when "'the defendant's conduct is shown to be motivated by an evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Disorbo v. Hoy, 343 F.3d 172, 186 (2d Cir. 2003) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).

Here, Williams argues that when the Court compares his written notification of removal to those of other suspended inmates, evil motive will be self-evident. To support his claim, Williams has submitted the notifications of removal given to three other inmates, each of whom was suspended from the CSC program within one month of Williams' suspension. (Paper 42-2 at 1-3). A comparison of these notifications, however, does not support Williams' allegations of evil intent.

The notification issued to Williams in July, 2004 states that on the day before the treatment team made its suspension decision, security personnel had been forced to remove Williams from his unit after he refused to

"lock in." The notification further notes that "[s]ince you started programming on 04/07/04, you have received two Major Dr's [sic] for racial or gender based comments, 1 Major DR for Interfering with an officer, 1 Major DR for disruptive behavior and a Minor DR for agitating and provoking an officer." (Paper 34-3 at 1). As discussed above, the notice concluded that Williams' behavior had been "negative and harmful," and that the CSC program needed to be a "non-criminal and non-threatening environment." Id.

Williams first invites comparison between his notification and the one issued to inmate Tim Hebert. Hebert was suspended after using "dehumanizing names" with staff and disruptively banging on his cell door and other items. (Paper 42-2 at 1). The notification does not specifically reference the number of DRs, if any, that were issued for this behavior. Hebert was suspended from CSC for "at least 30 days." Id.

The second comparison is with inmate Michael Baer. Baer was suspended for 30 days after receiving 5 minor DRs and engaging in a verbal confrontation with another offender. Id. at 2. Baer's notification remarked that

10

he had been doing "very well" until a certain time, and that his conduct may have been provoked by a disturbing letter from his ex-partner. Id. The third inmate is Dwayne Calloway, who was terminated from CSC for one year after threatening a correctional officer. Id. at 3.

Even when viewed in a light most favorable to Williams, these notifications do not show that the defendants were motivated by evil intent, or that they were recklessly indifferent to Williams' constitutional rights. Indeed, it appears that the 30-day suspensions were based upon disciplinary actions that were less severe than those imposed on Williams. The relevance of the Calloway notification is not clear, but a one-year termination based primarily upon a single incident with an officer certainly does not help Williams' position.[1] I therefore recommend that the Court GRANT the defendants' motion for summary judgment on the issue of punitive damages.

---

[1] Calloway may be the inmate referenced in Williams' complaint as having been removed four times before being terminated for a period of one year. Nonetheless, it is difficult to compare a one year termination with a 90 day suspension, particularly when the complaint is that the 90 day suspension was overly harsh.

11

IV. <u>Injunctive Relief</u>

Williams also claims that he is entitled to a restoration of good time credits. His claim is based upon the theory that if he had only been suspended for 30 days and then allowed to return to CSC, he would have been "eligible to receive 10 days of goodtime [sic] instead of 5." (Paper 42 at 9). Because this claim seeks to impact the length of Williams' period of incarceration, it cannot be brought pursuant to § 1983.

In <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 489 (1973), the Supreme Court held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." In that case, prisoners challenged the deprivation of good-time credits as a result of disciplinary proceedings, and sought injunctive relief to compel restoration of the credits. <u>Id.</u> at 476-77. The Court held that such a challenge is "just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." <u>Id.</u> at 489; <u>see also</u>

Wilkinson v. Dotson, 125 S. Ct. 1242, 1250 (2005) (Scalia, J. concurring). Therefore, if Williams wants to pursue a claim for restoration of his good-time credits, he must do so in a habeas corpus proceeding, and the defendants are entitled to summary judgment on this claim. See Preiser, 411 U.S. at 489; Smith v. Muccino, 223 F. Supp. 2d 396, 403 (D. Conn. 2002) (citing Edwards v. Balisok, 520 U.S. 641 (1997)).

V.   Official Capacity Immunity

In response to the defendants' argument for official capacity immunity under the Eleventh Amendment, Williams states that he is only suing the defendants in their individual capacities. (Paper 42 at 9-10). Even without Williams' withdrawal of his official capacity claims, the defendants' argument has clear merit. See, e.g., Brandon v. Holt, 469 U.S. 464, 471 (1985) (Eleventh Amendment immunity extends to state officials). The motion for summary judgment on Williams' official capacity damages claims should, therefore, be GRANTED.

VI.  Nominal Damages

The defendants' motion for summary judgment does not directly address the issue of racial discrimination.

13

Instead, the defendants have targeted Williams' specific claims for relief, and argued why each form of relief should be denied. The possibility of nominal damages, however, remains. Although Williams did not include a request for nominal damages in his complaint, the Second Circuit has held that such a failure does not preclude "the award of nominal damages . . . if the complaint explicitly [seeks] compensatory damages." Irish Lesbian and Gay Organization v. Guiliani, 143 F.3d 638, 651 (2d Cir. 1998) (citing Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir. 1986)).

The complaint in this case seeks compensatory damages, punitive damages, and "retroactive goodtime [sic] and damages." It is not clear from the complaint whether the last request for damages is merely redundant, or whether it is seeking an alternative form of damages. Because Williams' request for compensatory damages may entitle him to an award of nominal damages, the Court should not dismiss the entire case at this time. Instead, the Court should give Williams the opportunity to amend his complaint to "flesh out" any additional forms of relief he may be requesting. See Thompson, 284

F.3d at 419. This amendment should be filed within 20 days of the Court's ruling on this Report and Recommendation. Failure to file a timely amendment will likely result in the dismissal of the case.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Paper 34) be GRANTED, and that Williams' claims for compensatory damages, punitive damages, and retroactive injunctive relief be DISMISSED. I further recommend that Williams be allowed 20 days from the date of the Court's ruling on this Report and Recommendation to amend his complaint by adding any additional requests for relief. Failure to comply with this deadline will likely result in the dismissal of the case.

The defendant's motion for relief from an order granting Williams extra time to respond to the motion for summary judgment (Paper 40) is DENIED.

Dated at Burlington, in the District of Vermont, this day 3rd of April, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).